**PetersonDelleCave LLP**
Attorneys at Law

Woolworth Building
233 Broadway, Suite 1800
New York, NY 10279
(212) 240-9075

<u>**VIA ECF**</u>
Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square,
New York, NY 10007


Re:   <u>Julio Ellis and Kirkpatrick Ellison v. NYC et al</u>
      17-CV-646 (JMF)

September 21, 2017

Your Honor:

I am the attorney for Plaintiffs Julio Ellis and Kirkpatrick Ellison in the above-referenced action. The parties jointly submit this letter, as per this Court's Order dated January 30, 2017, in advance of the Initial Conference scheduled for September 28, 2017.

# 1. <u>A brief statement of the nature of the action and the principal defenses thereto</u>

   1.1. <u>Plaintiff's Version:</u>

Mr. Ellis and Mr. Ellison work as union carpenters, while also attending ongoing education at Union Brotherhood Technical College. On September 1, 2016, at approximately 6:45 pm, Mr. Ellis and Mr. Ellison were inside the Times Square subway station with their friend Louis Fevola. They were on their way to visit Mr. Fevola's grandmother in hospital.

Mr. Ellis and Mr. Ellison were standing on the train platform when PO Williams and PO John Doe approached them and told Mr. Ellis that he was talking too loudly. PO Williams grabbed Mr. Ellis by the arm and pulled him back onto the platform, then instructed PO John Doe to arrest Mr. Ellis.

Mr. Ellison stated that Mr. Ellis had done nothing wrong and asked the officers why they were arresting him.  PO Williams responded by grabbing Mr. Ellison and slamming him against a metal gate, causing great pain to his shoulder.  PO Williams attempted to put handcuffs on Mr. Ellison but was unsuccessful because of Mr. Ellison's backpack. PO Williams then pushed Mr. Ellison into the same gate, before slamming him onto the ground headfirst.  Mr. Ellison started bleeding from his head.  PO John Doe then pulled

Mr. Ellis to the ground. Since Mr. Ellis had recently undergone surgery to his right ankle, PO John Doe's actions caused Mr. Ellis to suffer pain.

Mr. Ellis was taken to NYU Medical Center as a result of the pain and swelling in his right ankle. Mr. Ellison was taken to the 58th precinct and was processed. Eventually Mr. Ellison was taken to Mount Sinai Hospital to receive treatment on his shoulder. After several hours, Mr. Ellison and Mr. Ellis were taken back to the 58th precinct and held overnight. At approximately 8:00 a.m. on September 2, 2016, Mr. Ellis and Mr. Ellison were transferred to Central Bookings where they spent several hours before they were arraigned and released.

Mr. Ellis was charged with three counts of Disorderly Conduct. Mr. Ellison was charged with OGA, Resisting Arrest, and Criminal Possession of a Knife. Mr. Ellison had a knife in his backpack for his work as a carpenter. The blade of the knife was shorter than four inches.

Mr. Ellison attended court on November 2, 2016 and accepted an Adjournment in Contemplation of Dismissal. Mr. Ellis had to attend court on numerous occasions and eventually all of the charges were dismissed after the commencement of a trial on December 14, 2016.

Mr. Ellis suffered pain and discomfort to his right ankle, upon which he had recently undergone surgery to repair a torn Achilles. As a result of being slammed into the metal gate and the ground, Mr. Ellison suffered a laceration on his forehead and torn rotator cuff in his right shoulder. The injury to Mr. Ellison's shoulder continues to cause him pain and discomfort and will likely require surgery. In addition, Mr. Ellis and Mr. Ellison both were caused to miss time from work and both suffered psychological and emotional damages as a result of this incident.

Plaintiffs' claims are for false arrest, malicious prosecution (Mr. Ellis only), denial of right to a fair trial, and excessive force.

1.2. Defendant's Version:

On September 1, 2016 at 6:45 pm at the Times Square subway station, PO Williams and PO Tahir observed three males engaged in a verbal dispute. A woman who became alarmed informed PO Williams that she thought the males were fighting. PO Williams approached plaintiffs Ellis and Ellison and asked them to keep the noise down. In response to PO Williams' instruction, the plaintiffs became even louder. When Mr. Ellis heard PO Williams, he said in sum and substance "man f**k this place, you can't tell me what to do, is there a f*****g rule about volume."

PO Williams explained to Mr. Ellis that his and Mr. Ellison's conduct was disorderly and in violation of the law, but nonetheless simply asked them to keep the volume down while their

conduct was disorderly and in violation of the law.  Mr. Ellis became angry and cursed at PO Williams saying "f**k you."  PO Williams then asked Mr. Ellis for identification, ran his name, and discovered he is a transit recidivist.  PO Williams then attempted to place Mr. Ellis under arrest because he was not eligible to receive a summons given his recidivist history.  However, when PO Williams attempted to handcuff Mr. Ellis and got one handcuff on, Mr. Ellison physically interfered by placing himself between PO Williams and Mr. Ellis thereby preventing PO Williams from handcuffing Mr. Ellis.  PO Williams instructed Mr. Ellison to move away but when he refused to do so, PO Williams grabbed Mr. Ellison, took him to the ground and handcuffed him.  As a result, Mr. Ellison sustained an abrasion above his left eye during the struggle.  Louis Fevola (the third male) who was also present, videotaped the incident on his cell phone.

PO Williams' partner, PO Tahir, maintained crowd control and did not make any physical contact with either plaintiff. Additional units arrived after Mr. Ellison was handcuffed. PO Williams picked Mr. Ellison up from the ground and brought him to a car upstairs awaiting transport to Transit District 1.  At the precinct, an ambulance was called for Mr. Ellison. Mr. Ellison complained of right shoulder pain, and told a supervisor that he had a pre-existing injury on his right shoulder. Mr. Ellison also asked for medical attention while in the cell. Mr. Ellison was transported to Mt. Sinai Hospital where he was noted to have a scrape and bruising but did not sustain any broken bones, nor required any stitches.

With respect to Mr. Ellis, Mr. Ellis was transported to NYU Hospital based on complaints he made on the scene of a pre-existing leg injury.

Mr. Ellis was held in custody for 20 hours 39 minutes and charged with 3 counts of Disorderly Conduct.  The charges were dismissed against Mr. Ellis on December 14, 2016.  Mr. Ellison was held in custody for approximately 20 hours and 38 minutes until arraignment and charged with Obstruction of Governmental Administration, Resisting Arrest and Criminal Possession of a knife.  Mr. Ellison accepted an Adjournment in Contemplation of Dismissal.

There was probable cause for plaintiffs' arrests.  As for both plaintiffs, they were acting disorderly at the train station.  This was not only observed by PO Williams but also an eyewitness who informed PO Williams that she believed plaintiffs and the other male were fighting. This provided probable cause for their arrest.  Additionally, when PO Williams asked for Mr. Ellis's identification and checked it, Mr. Ellis appeared as a transit recidivist, which provided another basis for his arrest.  As for Mr. Ellison, there was additional probable cause for his arrest based on his physical interference with Mr. Ellis's arrest for obstructing governmental administration.  Moreover, at the precinct, PO Williams found and vouchered a knife from Mr. Ellison's backpack.  This provided an additional basis for Mr. Ellison's arrest.

With respect of the excessive force claim, Mr. Ellison interfered with Mr. Ellis's arrest by placing himself between PO Williams and Mr. Ellis thereby preventing PO Williams from handcuffing Mr. Ellis.  When PO Williams instructed Mr. Ellison to move away and he refused to do so, PO Williams grabbed Mr. Ellison, took him to the ground and handcuffed

him resulting in a small abrasion above Mr. Ellison's left eye.  Accordingly, not only was any injury to Ellison's eye *de minimus* but the force (e.g., according to plaintiff, a grab, shove against gate, and a throw to the ground) used by PO Williams was also *de minimus* and objectively reasonable based on Ellison's physical interference with Ellis's arrest.  With respect to Mr. Ellis, PO Williams denies using any force used on him.  The only injury asserted by Mr. Ellis as a result any alleged force by PO Tahir, PO Williams's partner, was a throw to the ground which is *de minimus* and merely exacerbated Mr. Ellis's pre-existing ankle injury - also *de minimus*.

With respect to the malicious prosecution claim brought by Mr. Ellis only, he will not be able to satisfy each element necessary to sustain his burden of proof on his malicious prosecution claim because there was probable cause for his arrest as set forth above. Second, Mr. Ellis will not be able to establish that any of the individual defendants acted with any malice, another necessary element of his malicious prosecution claim.

With respect to the denial of right to fair trial claim, plaintiffs merely rehash the same set of facts, namely, that defendants falsified arrest paperwork and gave false statements in the ordinary course of the arrest processing and forwarded the same to the prosecutor.  Because plaintiffs' denial of a right to a fair trial claim is founded on the very same conduct that give rise to their Fourth Amendment claims of false arrest and malicious prosecution it is simply duplicative and will likely be dismissed as a matter of law.  Indeed, a recent United States Supreme Court reaffirmed this well-grounded principle that pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case and such claim cannot be converted into one founded on the Due Process clause because the right purportedly infringed lies in the Fourth Amendment alone. Manuel v. City of Joliet, 2017 U.S. LEXIS 2021, at *13-16 (U.S. Sup. Ct. Mar. 21, 2017).

## 2. The basis for subject matter jurisdiction

Venue is proper as the events occurred in Manhattan, within the jurisdiction of this Court, and the action is brought pursuant to 42 U.S.C. § 1983.

## 3. Existing deadline, due dates, and/or cut-off dates

There are no existing deadlines, due dates, and/or cut-off dates.

## 4. Outstanding motions

There are no outstanding motions or outstanding requests to file motions.

5. **Discovery that has taken place and is necessary for engagement in meaningful settlement negotiations**

Both parties exchanged initial disclosures, including medical records for both Plaintiffs. Plaintiffs are currently in the process of obtaining x-rays for Mr. Ellis from before and after the incident. In addition, Plaintiffs are obtaining records for confirmation of lost earnings. Also, Mr. Ellison will likely require surgery on his shoulder, which may delay the ability to engage in meaningful settlement negotiations for Mr. Ellison.

6. **Prior settlement discussions**

In accordance with the §1983 Plan, the parties participated in a Mediation Session with the Southern District's Mediation Program on August 10, 2017, but were unable to resolve the case at that time.

Thank you for your consideration.

                Respectfully submitted,

                /s/

                Malcolm Anderson

cc:    Suzanne E. Aribakan
        Senior Counsel
        New York City Law Department